UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCE D. JACKSON,<br><br>        Plaintiff,<br><br>    v.<br><br>DAVE DAVEY, et al.,<br><br>        Defendants. | CASE NO. 1:14-cv-1311-LJO-MJS (PC)<br><br>**FINDINGS AND RECOMMENDATION TO DISMISS ACTION WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**<br><br>**(ECF NO. 15)**<br><br>**FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff, proceeding in forma pauperis and represented by counsel, is a state prisoner in this civil rights action brought pursuant to 42 U.S.C. § 1983.

Plaintiff's Complaint (ECF No. 1) was dismissed for failure to state a claim, but he was granted leave to amend (ECF No. 9). Plaintiff's First Amended Complaint (ECF No. 13) was also dismissed with leave to amend (ECF No. 14). Plaintiff's Second Amended Complaint is now before the Court for screening. (ECF No. 15.)

**I.  SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  PLEADING STANDARD

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

### III. **PLAINTIFF'S ALLEGATIONS**

At all times relevant to this action, Plaintiff was incarcerated at Corcoran State Prison ("CSP").[1] He names the following individuals as defendants: (1) Warden Dave Davey and (2) Correctional Plant Manager II Marshall Fechner.

Plaintiff's allegations may be summarized essentially as follows:

Plaintiff is an African-American man in his early-50s. On February 2, 2012, prior to being housed at CSP, Plaintiff underwent routine chest x-rays with overall unremarkable results: no evidence of chest congestion and only minimal atelectasis.[2]

From September 27, 2012, through May 2014, Plaintiff was housed at CSP, in the prison's medical ward because he had high blood pressure and high cholesterol and because he was prone to epileptic seizures. The dorm in which he was housed during this 20-month period was contaminated with hazardous material that exacerbated his medical condition, resulting in treatment with prescription steroid medication.

Plaintiff filed numerous grievances and medical requests regarding these conditions and their effects on his health. On June 12, 2013, Plaintiff sent a grievance to Defendant Fechner, in which Plaintiff specifically asserted that he was affected with Chronic Obstructive Pulmonary Disorder ("COPD") and that he had severely restricted breathing as a result of the "deplorable" air quality in the medical dormitory. From May to August 2013, Defendant Fechner interviewed Plaintiff several times, and Plaintiff again informed this defendant of his breathing troubles as a result of the poor air quality.

On September 4, 2013, Defendant Fechner[3] and other unnamed defendants performed an inspection of the dorm site, revealing the following findings: "general

---

[1] The Second Amended Complaint refers to Plaintiff as "decedent," see Sec. Am. Compl. at 2 ¶¶ 2, 5, but no Notice of Death or Substitution of Party has been filed with the Court in accordance with Federal Rule of Civil Procedure 25. The Court will assume that this was a mistake unless notified otherwise by Plaintiff's counsel.

[2] Atelectasis is defined as a complete or partial collapse of a lung or lobe of a lung. Mayo Clinic, Diseases and Conditions, Atelectasis, http://www.mayoclinic.org/diseases-conditions/atelectasis/basics/definition/CON-20034847.

[3] In reference to this allegation, the Second Amended Complaint identifies the defendant as "Plant manager Fletcher." See Sec. Am. Compl., at 5 ¶ 25. Liberally construing the pleading, the Court assumes that Plaintiff intended to identify the named defendant, CSP Plant Manager II Marshal Fechner.

accumulations of dust on top of the overhead ducting and piping of the HVAC system from outdoors via doors, windows, bedding and from the flow (walk in and out)." During this inspection, Defendant Fechner visually observed the dust and debris, which included human waste such as hair, dead skin, cloth, etc., and which affected the ducts, pipes, supply ventilation, floors, walls and shelves.

On October 4, 2013, CSP's Associate Hazardous Material Specialist assessed the dorm's overhead HVAC ducting and recommended that an immediate duct clean-up be completed in order to remove the accumulated dust and debris.

On November 5, 2013, Defendant Fechner and Doe 1 made a remedial attempt at removing the accumulation of dust and debris, but the work had to be stopped when dust particles became airborne. The clean-up effort was never resumed, and, despite numerous requests by Plaintiff, no tests were ever performed to rule out the presence of hazardous materials.

On January 16, 2014, Defendant Fechner falsely represented to appeals examiners that the dust and debris clean-up performed on November 5, 2013, was satisfactorily completed. Based on this representation, no further clean-up was scheduled or performed.

In addition, the entire region where CSP is located was subject to a fungus called Coccidioidomycosis ("Cocci" or "Valley Fever"). Epidemiologic studies have shown that African-Americans, persons over the age of 54, and those with immune-compromised health are ten times more likely to be affected by Cocci than the general population. On March 11, 2014, a memo was issued by the California Department of Corrections ("CDCR") indicating that Plaintiff presented as a "medium medical risk" and was subject to "Cocci No. 2 area restrictions."

As a result of these environmental conditions at CSP, Plaintiff's health deteriorated – specifically, Plaintiff's ability to breath in an unrestricted manner was compromised. On July 23, 2014, an x-ray revealed atelectasis, scarring of the lungs,

1  COPD, and inflated lungs indicative of emphysema. An August 7, 2014, medical
2  evaluation produced the following findings: "there is no improvement. In fact there is
3  some worsening after bronchodilator, though the patient was apparently struggling with
4  the spirometry after bronchodilator due to cough and bronchospasm. Airway resistance
5  is mildly increased. Conclusion: cannot exclude airway disease based on this
6  study…diffuse capacity reduction is nonspecific, could relate to airway obstruction,
7  cannot exclude a superimposed interstitial or pulmonary vascular process and would
8  correlate clinically for possible anemia." As of September 4, 2014, plaintiff has been
9  prescribed an array of steroid medication, including a Flovent inhaler and Hipratropium
10 Bromide.

11  Defendant Davey reviewed Plaintiff's grievances, including the June 2013, 602
12 administrative grievance and the appeal examiners' responses at each step, and was
13 thus aware of both the poor air quality at CSP and its effects on Plaintiff's health. Despite
14 both actual and constructive knowledge, Defendant Davey failed to take any substantive
15 remedial action to improve the air quality.

16  Defendants instituted and enforced a custom, policy, and practice of: (1) denying
17 requests regarding conditions of confinement, (2) being deliberately indifferent to
18 inmates who have a higher susceptibility to illnesses, (3) inadequately supervising,
19 training, monitoring, and disciplining employees, and (4) failing to maintain and enforce
20 policies and procedures regarding air cleanup and inmate health.

21  Plaintiff seeks compensatory and punitive damages.

## IV. ANALYSIS

### A. Doe Defendants

Under Section 1983, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  In other words, there must be an actual connection or link between the

actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

In the Second Amended Complaint, Plaintiff names Doe Defendants 1-10, but identifies only Doe 1 and alleges only the following facts: Doe 1 assisted Defendant Fechner with the aborted clean-up effort on November 5, 2013. Because a defendant's mere participation in a clean-up effort does not give rise to a constitutional claim, this defendant will be dismissed from this action. Moreover, because this is Plaintiff's third unsuccessful attempt to state a claim against any Doe defendant, all Doe defendants will be dismissed with prejudice.

### B. Eighth Amendment

#### 1. Medical Indifference

##### a. Applicable Law

A claim of medical indifference requires: 1) a serious medical need, and 2) a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). A serious medical need may be shown by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id.; see also McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.").

The deliberate indifference standard is met by showing: a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and b) harm caused by the indifference. Id. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial

risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (brackets omitted) (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002)). "[A]n inadvertent failure to provide adequate medical care" does not, by itself, state a deliberate indifference claim for § 1983 purposes. McGuckin, 974 F.2d at 1060 (internal quotation marks omitted); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060.

### b. Plaintiff's Claim

Plaintiff's suit is premised on his claims that: he was exposed to dust and debris, hazardous material and Valley Fever spores from September 27, 2012 to approximately May 2014; that this exposure adversely affected his health; that both Defendants knew of the foregoing and were deliberately indifferent to it, i.e., knowingly refused to respond appropriately to it; and, that Plaintiff suffered harm as a result.

### c. Serious Medical Need

Plaintiff alleges that the February 2, 2012 chest x-ray revealed "minimal atelectasis" and was characterized as "unremarkable". Given that characterization, it cannot be said that Plaintiff has alleged he had a serious medical need at that time. (Even if he had, he has not, for the reasons discussed in previous Orders of this Court and below, alleged a cognizable deliberate indifference claim based on a failure to respond to this abnormality.)

On the other hand, the Court finds that the July 2014 diagnosis of atelectasis, scarring of the lungs and COPD/emphysema, unimproved with bronchodilator, with possible interstitial or pulmonary vascular process, possible anemia, reflects a serious medical need.

### d. Defendants' Knowledge

Plaintiff adequately alleges that he had many discussions with Defendant Fechner about his pulmonary problems which he attributed to the poor air quality and that Defendant Davey was made aware of same through his review of Plaintiff's grievances.

### e. Knowing, Purposeful Failure to Respond

There are, however, no facts pled to indicate that Defendants Fechner or Davey actually knew that Plaintiff's pulmonary condition was serious and then purposefully ignored or failed to respond to it and his medical needs. In fact, his pleading reveals that after his July 2014 x-ray and diagnosis, he received medical follow-up and prescription steroid treatment; such treatment is inconsistent with callous disregard. Plaintiff may have preferred other treatment, such as cleansing of the ward or his removal from the ward, but his mere disagreement with the chosen course of treatment does not support a claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

There is no reason to doubt that Plaintiff believes that there was a correlation between his symptoms and the air conditions and that he further believed that the latter aggravated the former. Clearly, Plaintiff believes that he should have been removed from the ward with the dust accumulation and/or that the dust should have been removed from the ward. There are, however, no facts alleged which could be said to support Plaintiff's speculation as to this correlation between existence of the dust and worsening of his condition. Even if his speculation was assumed to be valid, no facts pled support a claim that Defendants, or either of them, were aware of it and nevertheless knowingly ignored it.[4] And even if all the above suppositions were supported by non-speculative

---

[4] Plaintiff alleges Defendant Fechner's was aware of the dust and undertook to have the ducts and pipes cleaned. That does not reflect aknowledge of a known risk to Plaintiff or harm from not acting on that risk.

8

facts, there is likewise a failure to plead facts—such as a medical report, an opinion from a qualified medical expert, a scientific journal article—showing a correlation between the continued conditions and any harm to Plaintiff. Granted, Plaintiff's pulmonary condition appears to have worsened.  One might suppose a pulmonary condition could be aggravated by airborne waste, but Plaintiff is not qualified to so opine and he has not alleged facts indicating validity of such a belief. Nothing before the Court suggests the worsening was anything other than a natural progression of typically progressive emphysema/COPD.[5]

Note too that Plaintiff omits facts upon which it might be concluded that the dust and debris to which he was exposed were in fact "hazardous." While it is recognized that Valley Fever can cause very severe illness, it is quite prevalent throughout the San Joaquin Valley of California, and there is no indication it posed a unique "hazard" to Plaintiff because of his pre-existing pulmonary condition or his exposure to dust. Regardless, as discussed below, there is no allegation that any exposure actually caused any harm to Plaintiff.  He does not allege he has contracted Valley Fever.

Plaintiff's reference to the March 2014 memo indicating he was a "medium medical risk" and subject to "Cocci Area 2 restrictions" does not enlighten; it rather can be said to conflate two different sets of conditions (human airborne waste and dust and the possible presence of Valley Fever spores) and two apparently different pulmonary impairments. To the extent exposure to Valley Fever might be thought to give rise to a "conditions of confinement" claim, it will be discussed below. For purposes of the instant analysis, Plaintiff has not alleged facts which, if true, would support a finding that Defendants knew these environmental conditions, alone or in combination, posed a serious risk of harm to Plaintiff and that they then knowingly disregarded that risk and thereby did cause Plaintiff harm.

---

[5] See Mayo Clinic, Diseases and Conditions, Emphysema, http://www.mayoclinic.org/diseases-conditions/emphysema/basics/definition/con-20014218; NIH, What is COPD?, http://www.nhlbi.nih.gov/health/health-topics/topics/copd.

### f. Causation

As noted above, Plaintiff's belief that his environment was hazardous and aggravated his pulmonary impairment is mere supposition by a lay person lacking medical training or expertise. Were the case allowed to proceed, it ultimately would fail because of the lack of evidence to support Plaintiff's hypothesis. Plaintiff has effectively been so advised twice before. His failure on this, his third attempt, to indicate the existence of facts, rather than supposition, to support his claims is reasonably interpreted as the absence of ability to so allege such facts.

### g. Conclusion as to Deliberate Indifference Claim

The Court finds no constitutional violation supported by the allegations of Plaintiff's Second Amended Complaint. Given Plaintiff's repeated failure, even with the aid of licensed counsel, to plead facts supporting his claim that Defendants knowingly, purposefully refused to act to prevent harm to him and his similar failure to allege facts tying Defendants' acts or inaction to actual harm to Plaintiff, no useful purpose would be served by giving leave to amend. Plaintiff's medical indifference claim will be dismissed with prejudice.

## 2. Conditions of Confinement

To determine whether the conditions of Plaintiff's confinement constituted cruel and unusual punishment, the Court must assess whether Plaintiff was deprived of the "minimal civilized measure of life's necessities." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To state a claim for threats to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those

10

risks. Farmer, 511 U.S. at 834; Frost, 152 F.3d at 1128. To adequately allege deliberate indifference, a plaintiff must set forth facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

The pleading deficiencies noted above apply equally and with essentially the same effect here. Plaintiff has failed to plead facts supporting a claim that he was exposed to a known risk, that Defendants knowingly and purposefully declined to act to prevent his exposure to it, and that such a failure caused actual harm to Plaintiff,

As noted, the pleading fails to identify any hazardous material at CSP other than possible Valley Fever spores. Although Plaintiff does not allege that he contracted Valley Fever while housed at CSP, recent unpublished decisions from the Ninth Circuit suggest that a plaintiff need not to allege that he or she actually contracted the disease. See Smith v. Schwarzenegger, 393 F. Appx. 518, 519 (9th Cir. 2010) (citing Helling v. McKinney, 509 U.S. 25, 35 (1993), the Court held that it was not inconceivable that the Plaintiff could allege a cognizable claim based on Valley Fever exposure) (unpublished); Johnson v. Pleasant Valley State Prison, 505 Fed. Appx. 631, 632 (9th Cir. 2013) ("[D]ismissal of [the plaintiff's] action was improper at [the pleading] stage because [the plaintiff] alleged that prison officials were aware that inmates' exposure to valley fever posed a significant threat to inmate safety yet failed to take reasonable measures to avoid that threat.") unpublished); Samuels v. Ahlin, 2014 WL 4100684 (9th Cir. 2014) (unpublished); see also Beagle v. Schwarzenegger, 2014 U.S. Dist. LEXIS 107548, at *33-34 (E.D. Cal. July 25, 2014). The Court therefore proceeds on the assumption that Plaintiff may have sufficiently alleged the presence of environmental conditions, i.e., Valley Fever Spores, that constituted an excessive risk to his safety.

Turning to the second prong, Plaintiff alleges that the Defendants were aware of the risks to Plaintiff's health and acted with deliberate indifference by "failing to take any

substantive remedial action to ameliorate said condition" (Defendant Davey) and by making false representations regarding the completion of the clean-up effort (Defendant Fechner).

Per the March 2014 memo, it was determined that Plaintiff was a "medium medical risk" for Valley fever and, consequently, was made subject to "Cocci No. 2 area restrictions." But neither this memo nor any other facts alleged suggest any medical or physiological connection between the apparent risk of Valley Fever to Plaintiff, on the one hand, and his other pulmonary impairments related to the continued exposure to dust in the ward.

As to the claim of deliberate indifference based on Plaintiff's continued housing in the dusty ward, the Court previously informed Plaintiff, first, that Defendant Davey's review of Plaintiff's administrative grievances and his failure to order an immediate clean-up is, without more, insufficient to establish deliberate indifference.

As to Defendant Fechner, Plaintiff asserts additional facts in the Second Amended Complaint which, if true, could support a finding that this defendant was aware of Plaintiff's health issues and the poor environmental conditions at CSP. Further, Defendant Fechner is alleged to have represented, falsely, that the environmental cleanup was satisfactorily completed. Surely, it was foreseeable that such a misrepresentation, if made, would militate against, if not effectively rule out, any further cleanup.  So, Plaintiff has alleged that Defendant Fechner: 1) knew that Plaintiff had pulmonary impairments  and complained of difficulty breathing; 2)  knew that there was dust in the ward which Plaintiff claimed aggravated his pulmonary problems; 3)  knew that a "Hazardous Material Specialist" felt the dust warranted immediate clean up; 4) knew that cleanup of the dust was incomplete; and, 5) nevertheless made a false statement to the contrary with the presumed knowledge that the statement would foreclose further cleanup of the dust.

However, there is nothing in this, Plaintiff's third attempt to plead a cognizable claim, to address the remaining, necessary element of a conditions of confinement claim, namely, that the failure to complete the cleanup did in fact pose a "substantial risk of serious harm" to Plaintiff and that Defendant Fechner was aware of any such substantial or excessive risk, and was deliberately indifferent to it. As with the medical indifference claim, the absence is fatal. As with the medical indifference claim, Plaintiff's inability on this, his third attempt, to plead the "knowing" disregard element justifiably forecloses further attempts. Leave to amend will be denied.

### C. Unconstitutional Custom or Policy

Lastly, Plaintiff brings suit against Defendants for instituting and enforcing a custom, policy, and practice of: (1) denying requests regarding conditions of confinement, (2) being deliberately indifferent to inmates who have a higher susceptibility to illnesses, (3) inadequately supervising, training, monitoring, and disciplining employees, and (4) failing to maintain and enforce policies and procedures regarding air cleanup and inmate health. These conclusory allegations are similar to the allegations considered and rejected by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009) ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). Accordingly, Plaintiff's second claim for relief will also be dismissed with prejudice.

### V. CONCLUSION AND RECOMMENDATION

Plaintiff's Second Amended Complaint fails to state a cognizable claim. He previously was advised of pleading deficiencies and afforded the opportunity to correct them. He failed to do so. Any further leave to amend reasonably appears futile and should be denied.

The undersigned recommends that the action be dismissed with prejudice, that dismissal count as a strike pursuant to 28 U.S.C. § 1915(g), and that the Clerk of the Court terminate any and all pending motions and close the case.

The findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   August 21, 2015              /s/ *Michael J. Seng*
                                      UNITED STATES MAGISTRATE JUDGE